UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

UNITED STATES OF AMERICA             CRIMINAL NO. 11-CR-198-01

VERSUS                               JUDGE HAIK

RICHARD J. BUSWELL et al.            MAGISTRATE JUDGE HANNA

*RULING*

Before the Court is the defendant's First Motion for Bond which is opposed
by the government.  (Rec. Doc. 115)  For the reasons which follow the motion is
DENIED and the defendant will be detained pending trial.

***Factual and Procedural Background***

On August 10, 2011, Defendant Richard J. Buswell was indicted on charges
of conspiracy to commit securities fraud, investment advisor fraud, wire fraud, and
mail fraud in violation of 18 U.S.C. §371; securities fraud in violation of 15
U.S.C. §§78j(b) and 78ff; 17 C.F.R. §240.10b-5; investment advisor fraud in
violation of 15 U.S.C. §§80b-6 and 80b-17; wire fraud in violation of 18 U.S.C.
§1343 with forfeiture allegations; and mail fraud in violation of 18 U.S.C. §1341
with forfeiture allegations. (Rec. Doc. 1).  At his initial appearance and
arraignment, the defendant indicated he would be represented by retained counsel,
Daniel Stanford.  (Rec. Doc. 12).  The defendant was released pending trial subject
to conditions.  (Rec. Doc. 12, 13).  One of the *standard* conditions was that the

defendant not violate any federal, state, or local law while on release.  (Rec. Doc. 13). One of the *special* conditions was that the defendant "avoid all contact, directly or indirectly, with any person who is or may become a victim or potential witness in the investigation or prosecution." (Id.)  That condition was explained to the defendant at the time of his arraignment to specifically include any of the people who were investors in the matter that is the subject of the instant indictment.

Trial by jury was set within the Speedy Trial Act deadline for December 5, 2011, however on motion by the defendants made November 10, the case was certified as complex and on November 21 the trial was continued. (Rec. Docs. 28, 30)

On December 8, 2011, the defendant was arrested by local authorities and charged with two counts of manufacturing/distributing controlled dangerous substances, specifically synthetic cannabinoids, through a store or stores he owned/operated known as Curious Goods.  On December 9, a Petition for Revocation of Pre-Trial Release was filed (Rec. Doc. 33) and an arrest warrant was issued (Rec. Doc. 35).  There were three hearings which followed, one at the time of the defendant's initial appearance on December 9 (Rec. Doc. 37, Transcript at Rec. Doc. 50), a detention hearing on December 12 pending the

revocation hearing (Rec. Doc. 4, Transcript at Rec. Doc. 51), and the revocation

hearing on December 15 (Rec. Doc. 45, Transcript at Rec. Doc. 49).  Based on the

evidence adduced at these hearings, this Court made the following pertinent

findings of fact:

> The defendant was arrested pursuant to warrant and charged with two counts of manufacturing/distributing controlled dangerous substances in violation of state law.

> On October 19, 2011, less than a week after his arraignment, the defendant had a chance encounter at Couchon Restaurant with two material witnesses for the prosecution in the instant case, who are alleged victims of the fraud set forth in the indictment.

> On October 20, 2011, the defendant filed a police report in which he stated that the two alleged victims were intoxicated, yelled and cursed at him, and that at least one of them had battered him and had to be physically restrained.  Video surveillance and the testimony of the staff at Couchon's Restaurant conclusively disproves these allegations.

> On November 2, 2011, a civil suit was filed against the victims, containing similarly false allegations.  The suit was brought to the attention of this Court, and despite the Court's strong reaction upon receipt of that notice to counsel for the defendant and the Assistant U.S. Attorney in a status conference on November 16, 2011, (Rec. Doc. 29)  it was not dismissed, but proceeded forward through the date of the revocation hearing requiring the alleged victims to retain counsel to defend them against the false allegations at significant financial expense and emotional distress.

> On December 9, 2011, after his arrest pursuant to the petition of revocation, the defendant was given additional conditions of release,

to include home incarceration with his mother, who was designated a third party custodian.  Between December 9 and the time of the revocation hearing on December 15, with his mother's  knowledge, the defendant was visited by three owners or managers or employees of other Curious Goods stores, which had been closed as a result of the search warrants executed on December 8, 2011.[1]

Based upon these findings of fact, pursuant to 18 U.S.C. § 3148(b), this Court concluded there was probable cause to believe the defendant violated two state laws - the distribution and manufacture of a controlled dangerous substance in violation of La.R.S. 40:964 and filing a false public record in violation of La. R.S. 14:133.   The Court also concluded there was clear and convincing evidence the defendant violated Condition 'J' of the special conditions of his prior release when the civil lawsuit containing false allegations was filed against the two alleged victims/material witnesses. This Court ruled there was no condition or combination of conditions of release that would assure that the defendant would not pose a danger to the safety of any other person or the community and that the defendant was not likely to abide by any condition or combination of conditions of release.

The defendant's pre-trial release was revoked and he was ordered detained pending trial.  (Rec. Doc. 48).  He appealed the Revocation and Detention Order

---

[1]        Order of Revocation, Rec. Doc. 48.

on February 22, 2012.  (Rec. Doc. 68).  The district court affirmed the decision to revoke pre-trial release.  (Rec. Doc. 77).  On January 10, 2012, trial was set for October 22, 2012. (Rec. Doc. 54)

On April 18, 2012, the government filed a motion to evaluate the conflict of interest between retained counsel and the defendant.  In its motion, the government alleged that Daniel Stanford "played a significant role regarding Curious Goods and that he was well compensated for his participation."  (Rec. Doc. 74, p. 3).  In response to the government's motion, this Court set an evidentiary hearing for May 14, 2012.  Although Mr. Stanford appeared with the defendant, by court order an attorney designated by the federal public defender's office, Ian Hipwell, appeared to advise the defendant if necessary. Mr. Stanford denied the existence of a conflict of his personal interests with those of his client, and argued the harm and hardship that would be visited upon the defendant should he be forced to engage new counsel.  A second hearing was set for May 22 at which time a ruling was anticipated.  The Court also ordered Mr. Hipwell to review the evidence submitted by both sides and visit with the defendant, independent of Mr. Stanford, to advise him as necessary given the issues raised by the government.

On May 18, the Grand Jury indicted Buswell and two other defendants with

one count of conspiracy to distribute a schedule I controlled dangerous substance (hereinafter referred to as the "Curious Goods case").[2]  However, the indictment was filed under seal and neither the defendant nor Mr. Stanford would have been aware of the charges at the time of the hearing on May 22.  The government did represent at the hearing that both the defendant and Mr. Stanford had been classified as "targets," as opposed to subjects, of the federal investigation although no target letter was produced. (Rec. Doc. 83, p. 4).

As a result of the evidence produced, this Court found that a potential for conflict existed and disqualified Mr. Stanford on June 25, 2012. (Rec. Doc. 93) The Court also appointed the Office of the Federal Public Defender to defend Buswell or recommend appointment from the CJA panel.  That attorney was Ian Hipwell, who was also assigned to represent Buswell in the Curious Goods case. (Curious Goods Rec. Doc. 40) When the defendant was arraigned in that case, the government moved for detention on the grounds of danger to the community and the defendant waived his right to a detention hearing. ( Curious Goods Rec. Doc. 39)

In conjunction with his representation of the defendant in the Curious Goods case, Mr. Hipwell obtained a copy of a recorded interview given to the

---

[2]        See *United States v. Boyd Anthony Barrow, et. al.,* docket number 6:12-cr-146.

government by Buswell on April 5. Mr. Stanford was provided a copy of that recording, and on August 3, 2012, he appealed the ruling disqualifying him on the basis of newly discovered evidence. (Rec. Doc. 105) The district court remanded the motion for rehearing by the undersigned in light of the newly discovered evidence. (Rec. Doc. 106)  In the interim, on July 17, a motion for continuance filed by the defendant was granted and the trial date of October 22, 2012 was set aside. (Rec. Docs. 100, 101)

On September 4, 2012 a Superceding Indictment was returned in the Curious Goods case in which Buswell was indicted on one count of Conspiracy to Distribute and Possess with Intent to Distribute a Schedule I Controlled Dangerous Substance, one count of Conspiracy to Introduce and Cause to be Introduced Misbranded Drugs into Interstate Commerce, one count of Money Laundering Conspiracy and eight counts of Money Laundering.[3]  The previous detention order was maintained. (Curious Goods Rec. Doc. 127) Mr. Stanford was also indicted on the same conspiracy counts and ten counts of money laundering. Other newly named defendants in the Superceding Indictment include Curious Goods, LLC and another attorney associated with the Curious Goods operation, Barry Domingue.  Considering this indictment, and notwithstanding the newly

---

[3] The case was re-captioned *United States v. Reece, et al,* 12-cr-146, Rec Doc. 57.

discovered evidence, this Court affirmed its previous ruling disqualifying Mr. Stanford on September 28. (Rec. Doc. 109)

On October 24, 2012 the trial was set for October 7, 2013. (Rec. Doc. 112) The trial of the Curious Goods case, also certified as complex, is scheduled to take place on July 8, 2013.  The defendant has now moved to be released pending trial in this case which the government opposes.  A detention hearing was held on January 11, 2013 at which this Court invited the government to make its arguments and assert its evidence against pre-trial release in both this case and the Curious Goods case.  The defendant did not object.

At the detention hearing the government demonstrated that, while incarcerated, the defendant was arguably a principal to a felony as he was the recipient of contraband smuggled to him by an employee of the Iberia Parish Sheriff's Department who worked as a nurse at the jail.  According to the witness who was charged with violation of La.R.S. 14:402, Buswell learned of her financial problems. At his request, she retrieved a package from Buswell's girlfriend at one of the Curious Goods locations and was paid three hundred dollars for bringing the package to him. She did not examine the contents before delivering it, and while the contents ultimately proved to be somewhat innocuous, (except for a razor) the fact was that Buswell actively participated in a clear

violation of the law and/or jail policies.

In addition, while incarcerated, Buswell logged thousands of recorded telephone calls. In some of them he made threatening statements against the prosecutor to the extent a threat file was opened by the U.S. Marshal Service. While the investigating Deputy Marshal did not feel Buswell posed a threat while he was incarcerated, he along with the FBI case agent felt like Buswell would pose a threat if released.  Likewise, the pre-trial services officer testified he did not think there were conditions that he would recommend that would warrant Buswell's release.  There was no evidence to the contrary.

The evidence showed Buswell's mother, to whom this Court had entrusted her son as his third party custodian in the past, was depositing money into the commissary account of the incarcerated son of one of Buswell's nurses in what was described as an effort to buy influence.  His mother/brother continued to own/operate the Curious Goods stores which sell drug paraphernalia, which is potentially a felony under either state or federal law.[4]  No alternative third party custodian was offered, and it was argued by the defense that Buswell should be released to home incarceration with his mother with some form of electronic monitoring.

---

[4]        See. La. R.S. 40:1021, 1023; 21 U.S.C. §863.

The testimony of Lt. Richard Martin, the administrative lieutenant for the Iberia Parish jail, along with correspondence from the Warden, established that Buswell can be provided a separate conference room to meet with his attorney where there was no audio recording.  Other than during mandatory lockdowns at meal times, the attorneys can have access to their clients even after hours and on weekends. Buswell can utilize a laptop to read documents that are on DVD/CD, he can keep documents in his cell and internet access is available on request.  There was no evidence to the contrary.

Considering these facts, this Court finds the defendant failed to meet his burden of proof in the instant case under 18 U.S.C. § 3142(i), or to show any violations of the Fifth Amendment Due Process clause or the Sixth Amendment which would render moot any motion for release in the Curious Goods case. However, considering the evidence and applying the factors under 18 U.S.C. § 3142(g), the Court also finds the defendant would not be entitled to release under 18 U.S.C. § 3142(e) in the Curious Goods case, and therefore, the defendant is ordered detained until trial.

### *Applicable Law and Discussion*

The defendant asserts two grounds to justify release:

1. His continued incarceration denies him the right to a fair trial and/or the

effective assistance of counsel by having to defend two complex cases, involving

thousands of documents, experts, and numerous hours of jailhouse recorded

conversation, which his attorneys cannot adequately address from long distance

while he is incarcerated and/or because of their limited access to him while he is

incarcerated; and

2. The defendant's right to due process is denied due to his incarceration for the

extended period of time prior to trial in either case.


***Whether release of the defendant is necessary to prepare his defense.***

The defendant is presently detained because his pre-trial release was

revoked under § 3148(b) of the Bail Reform Act. That decision was appealed and

affirmed by the district court.  Although styled as a motion under 18 U.S.C. §

3145, and argued by both sides, at times, as a motion brought due to change of

circumstances under 18 U.S.C. § 3142(f), the defendant's motion is properly

brought under 18 U.S.C. § 3142(i) which provides in pertinent part:

> The judicial officer may, by subsequent order, permit the temporary
> release of the person, in the custody of the United States marshal or
> another appropriate person, to the extent that the judicial officer
> determines such release to be necessary for preparation of the

person's defense or for another compelling reason.[5]

In light of this determination, the defendant does not bear the burden to show a change of circumstances as would be required under § 3142(f) to reopen the detention hearing. However, the defendant does bear the burden to show that his release is "necessary for preparation of the person's defense".  *United States v. Dupree*, 833 F.Supp.2d 241, 246 (E.D.N.Y. 2011) citing *United States v. Jeffries*, 2011 WL 182867 at *4 (E.D. Tenn. Jan. 20, 2011) and *United States v. Birbragher,* 2008 WL 2246913 at *1-2 (N.D. Iowa May 28, 2008).  However,  the facts surrounding the underlying reasons for the defendant's detention are relevant to the analysis.

Notwithstanding the revocation in this case, applying the factors found in § 3142(g) to the allegations contained in the indictment in the Curious Goods case, (which arose out of conduct the defendant engaged in while on pre-trial release in this case), and the evidence produced at the detention hearing, the defendant would not be entitled to pre-trial release in the Curious Goods case as he is a danger to the community.

The sale of synthetic cannabinoids, in the volumes alleged, is an offense

---

[5] The defendant agreed with this Court's assertion that this motion is properly brought under § 3142(i) as opposed to §§ 3142(f) or 3145.

involving a controlled substance which was allegedly misbranded and sold to the public to ingest for the purpose of getting high.  The allegations are at least analogous, if not more egregious, than those of a high volume drug dealer who hides/falsifies the ingredients in the product he sells.  Even after he was incarcerated the defendant continued to try and get this product back on the shelves of his Curious Goods stores to be sold. The first factor weighs in favor of detention.

The second factor, the weight of the evidence against the person, weighs in favor of detention based upon the evidence presented by the case agents in this most recent detention hearing as well as the hearings conducted at the time of the revocation.

Evaluation of the third factor, the history and characteristics of the person, does reveal some information that would weigh against detention. However, the defendant  has a criminal history associated with drug abuse and violence.  He has made threatening overtures toward the prosecutor. He has tried to intimidate material witnesses by filing false police reports and frivolous civil lawsuits against them in direct violation of the conditions of his release. The uncontroverted testimony is that, if released, he would be viewed as a threat by  agents of law enforcement. This factor weighs in favor of detention.

The last factor, the nature and seriousness of the danger to any person or the community, dovetails with the third.  Considering the presumption that arises by virtue of § 3142(e) and the indictment in the Curious Goods case, Buswell did not rebut the presumption and would not be entitled to pre-trial release in the Curious Goods case now even if he had not been revoked in this case before.  Therefore, it is only by way of § 3142(i) and/or his Constitutional arguments that he might prevail.

*Dupree* provides good guidance as to the factors to weigh in the § 3142(i) analysis. First, is whether the defendant has been afforded ample time and opportunity to prepare for the trial and participate in his defense. This factor weighs against release. The trial is in October. The government has produced documents months ago, complete with indexes of those documents. The government has allowed defense counsel access to documents they do not intend to use and have/will provide copies of all documents on CD/DVD.  The testimony is that the facility where the defendant is housed will accommodate him by providing access to a conference room, a laptop computer that can read CD's (which he may even be allowed to keep in his cell with the permission of the warden), access to a printer and/or copier and access to his attorneys at all times other than during lockdown periods when meals are served twice a day.

-14-

In the Curious Goods case set for trial in July, this Court has committed to monthly status conferences to insure that the discovery process is proceeding smoothly and efficiently so that access to all documents produced by the government can be made available to the defendant at or about the same time it is made available to defense counsel.

The second area of analysis involves the complexity of the case, volume of information, expense and inconvenience. There is no question both cases are complex and both involve large volumes of information.  Some of that information is the vast number of recordings of telephone calls made by the defendant in which comments he has made could be utilized as evidence. The defendant has long been aware his phone conversations are recorded. It would be absurd to allow a defendant who is incarcerated to create an avenue for his release by his own ill-advised comments over the telephone lines he knows are recorded. The remaining documents are primarily financial records which can be reviewed by the defendant while he is incarcerated by way of a laptop and CD/DVD storage of data.

While the defendant's incarceration is admittedly inconvenient to his attorneys who must travel approximately 90 minutes one way to the jail, even when considered in conjunction with the complexity of these cases which may require review of thousands of documents and hours spent with lawyers,

inconvenience due to confinement is common to all incarcerated defendants and does not justify release. *Dupree,* 833 F.Supp.2d at 249. See also *United States v. Stanford*, 722 F.Supp.2d 803, 812-813 (S.D. Tx. 2010) *aff'd.* 394 Fed. Appx. 72 (5th Cir. 2010).

With regard to expense, the defendant is presently represented by appointed counsel and given the nature of these proceedings, this Court will issue an order of appointment of additional counsel and/or defense counsel may seek compensation for additional counsel pursuant to the *Guide to Judicial Policies and Procedures, Vol. VIIA*, §§ 230.53.10-20 at no cost to the defendant.  This factor does not justify release.

The defendant bears the burden to prove that his release is necessary to prepare for his defense. He has not met that burden. Therefore, his motion for release under 3142(i) is denied.

***Whether continued incarceration violates the Sixth Amendment right to the effective assistance of counsel***

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel, *Strickland v. Washington*, 430 U.S. 816, 821 (1977), which implicitly includes the right to meaningful access to counsel. "This means that inmates must have a reasonable opportunity to seek and receive the assistance of

attorneys," and, therefore, "[r]egulations and practices that unjustifiably obstruct the availability of professional representation or other aspects of the right of access to the courts are invalid." *Procunier*, 416 U.S. at 419 (citation omitted). *U.S. v. Neff* 2013 WL 30650, 5 (N.D.Tex. 2013)

Buswell argues, without any evidence, that his continued detention and the conditions presented at his detention site violate his Sixth Amendment right to prepare for trial with the effective assistance of counsel.  The evidence adduced at the detention hearing is as set forth above–the defendant can have access to his attorneys at any time other than in two mandatory lockdown periods when meals are served, he can have access to a conference room to review documents with his attorneys, he can have access to a computer to review documents on CD/DVD, or he can have the documents themselves, as well as access to a printer or copier and the internet. He can telephone his attorneys and those calls, while recorded as part of normal security policy, are not monitored by the government and there is no evidence to the contrary. The only meaningful difference between this type of access to counsel compared with that of home incarceration is the location where conferences take place.

This Court concludes that the defendant has ample access to his defense team, and therefore, does not find that his continued confinement violates his

Sixth Amendment right to the effective assistance of counsel.

***Whether continued incarceration violates the defendant's Due Process Rights***

Courts may order a defendant detained pretrial consistent with the Due

Process Clause of the Fifth Amendment as long as that detention is not

"punishment of the detainee."  *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S.Ct. 1861,

60 L.Ed.2d 447(1979); *see also United States v. Salerno*, 481 U.S. 739, 746, 107

S.Ct. 2095, 95 L.Ed.2d 697(1987).  "Absent an expressed intention to punish,

whether detention constitutes impermissible punishment or permissible regulation

turns on whether the government has a nonpunitive reason for detention and

whether detention 'appears excessive in relation to' the nonpunitive purpose."

*United States v. Millan*, 4 F.3d 1038, 1043(2d Cir. 1993) (*quoting Wolfish*, 441

U.S. at 538). "[E]xcessively prolonged" detention may become so unreasonable in

relation to the regulatory goals of detention that it violates due process.  *Salerno*,

481 U.S. at 747 & n. 4, 107 S.Ct. 2095; *United States v. Hare*, 873 F.2d 796, 800-

01(5th Cir. 1989).

Due process challenges to pretrial detention must be assessed on a case-by-

case basis. *United States v.Hare*, 873 F.2d at 801.  A court must consider not only

factors relevant in the initial detention decision, such as the seriousness of the

charges, the strength of the government's proof that the defendant poses a risk of

-18-

flight or a danger to the community, and the strength of the government's case on the merits, but also the additional factors such as (1) the length of the detention that has in fact occurred or may occur in the future, (2) the non-speculative nature of future detention, (3) the complexity of the case, and (4) whether the strategy of one side or the other occasions the delay. *Id.*

The factors justifying detention under § 3142(g) have been set forth above. If this Court were to release the defendant to the additional conditions of home incarceration with electronic monitoring as the defendant suggests, as history and the facts indicate, "the Court would in the end still have to rely on Mr. [Buswell's] word that he will not commit another crime." *United States v. Argraves*, 2010 WL 283064 at *5 (D. Conn. 2010).  This Court has given the defendant that benefit before only to be disappointed by the actions of the defendant, his third party custodian and his family, i.e. the same people to whom he would ostensibly be released now.

As to the additional factors stated in *Hare*, the Court finds them clearly militating against release.

*(1)  Length of Detention*- The defendant argues his detention, which now has been one year and will  have been twenty-two months when this case goes to trial, violates his due process rights.  While the length of pretrial detention is one factor

courts are to consider, it alone is not dispositive and carries no fixed weight in a due process analysis.  *See United States v. Millan*, 4 F.3d at 1044.  Length of detention "will rarely by itself offend due process." *United States v. Orena*, 986 F.2d 628, 631( 2d Cir. 1993).  In fact, Buswell has failed to cite to any Fifth Circuit authority declaring that the anticipated 22 month pretrial detention at issue, standing alone, violates the due process clause.[6]  The Curious Goods case is less than 7 months away as of this writing, and therefore, his pretrial detention for that case will not exceed 19 months.

*(2)  Non-speculative Nature of Future Detention*- This matter is set for trial on October 7, 2013.  The date was selected by the parties during a telephone conference with the undersigned.  Defense counsel rejected earlier offered trial dates, urging that additional time was needed for preparation of the defendant's case.   The Curious Goods case was also set for trial in conference with counsel for the defendants for July of 2013. There is nothing speculative about the nature of future detention.

**(3)** *Complexity of the Case*-Both sides agree that this case, along with the Curious

---

[6]     See, e.g., *United States v. El–Hage*, 213 F.3d 74, 77–79 (2d Cir.2000) (considering a thirty– to thirty-three-month pretrial detention); *United States v. Millan*, 4 F.3d 1038, 1044 (2d Cir.1993) (considering a thirty-month pretrial detention). *U.S. v. Stanford*  394 Fed.Appx. 72, 75, 2010 WL 3448524, 2 (5th Cir. 2010)

Goods matter, are complex.  Buswell urges that the document-intensive nature of his case makes it particularly complex, sufficient to warrant his release from detention which could facilitate his assistance to his attorney in preparing his defense.  As this Court has found, documents can be reviewed on a computer and such review need not occur outside the jail setting as accommodations can be made to allow the defendant to have access to a computer for that purpose. Acknowledging for the moment that the scope of evidence to be reviewed may necessitate additional and lengthier attorney/client consultations does not change the situation presented from merely 'inconvenient' to oppressive.  The inconvenience occasioned by this situation does not justify the defendant's release. "Accepting such an argument would mean that the more complicated the crime, the more likely a defendant should be released prior to trial. This is clearly an absurd result." *United States v. Dupree*, 833 F.Supp. 2d  249 quoting *United States v. Birbragher*, 2008 WL 2246913 at *1.

**(4) *Occasion for the delay*-** While it cannot be said that the trial setting was delayed or unreasonably postponed by the government, to the detriment of the defendant,  other factors should be considered in the context of this component of the analysis.  The defendant was faced with the removal of his chosen defense attorney due to government action against that attorney in the Curious Goods case.

The delay which resulted from the removal of one attorney (and Buswell's challenge to the removal), the appointment of new counsel, and the transfer of file materials and access to government discovery materials from one attorney to a new one, all contributed to and caused the defendant to request a trial postponement to allow for defense preparation.  On these facts, necessitated in part by allegations of a criminal conspiracy between Buswell and his chosen counsel, the 22 month pretrial detention period at issue cannot be attributable to unreasonable actions on the part of the government.

In sum, none of the factors enunciated in *Hare* militate in favor of release pending trial. Therefore the defendant's motion seeking release on due process grounds will be denied.

### *Conclusion*

The defendant's position, while regrettable, is largely if not exclusively of his own making. He was given opportunities to remain on release pre-trial with fairly standard conditions. He violated those conditions. He continued to violate conditions and laws even after he was incarcerated. The individuals to whom he could conceivably be released have not changed thier ways, and therefore, even if released he may likely be revoked again for violating the conditions of his release. Therefore, for the reasons given above,

IT IS ORDERED that the defendant's motion for bond is DENIED.

Signed at Lafayette, Louisiana this 17th day of January, 2013.


PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE